## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KELSIE KIMBERLIN,<br>TETYANA KIMBERLIN,<br>KARINA KIMBERLIN,<br>BRETT KIMBERLIN,<br><br>    Plaintiffs.<br><br>    v.<br><br>RUSSIAN FEDERATION,<br>Ministry of Foreign Affairs<br>Moscow, RUSSIA,<br><br>DEMOCRATIC PEOPLE'S<br>REPUBLIC OF KOREA,<br>Ministry of Foreign Affairs<br>Pyongyang, NORTH KOREA, and<br><br>ISLAMIC REPUBLIC OF IRAN,<br>Ministry of Foreign Affairs<br>Tehran, IRAN, and<br><br>THE IRANIAN REVOLUTIONARY GUARD –<br>QUDS FORCE,<br>Tehran, IRAN.<br><br>    Defendants. | No.  1:26-cv-00007 |

## COMPLAINT

1.  On February 22, 2024, Andrii Rachok ("Andrii"), at the age of 21, was killed by terrorists from the Russian Federation ("Russia"), who on February 27, 2014, invaded the sovereign county of Ukraine in violation of international law, the Budapest Memorandum, and Resolutions of the United Nations.  Russia was aided in that killing by terrorists from the Islamic Republic of

Iran ("Iran"), the Democratic People's Republic of Korea ("North Korea") and the Iranian Revolutionary Guard and its Quds Force.

2.  Andrii was killed near the city of Avdiivka, Ukraine while defending his country from these terrorists.  Based upon reports from Andrii's fellow soldiers in the Third Separate Assault Brigade, his unit fought in an intense battle lasting more than 10 days.  Through such, Andrii was protecting civilians in the city of Adviivka, as well as his fellow soldiers in the Third Separate Assault Brigade.  During this battle, Andrii's unit was hit by mortars and also attacked by drones (Shahed), and available information and reports indicate that Andrii was killed due to injuries caused by the use of such weapons.

3.  Numerous published media reports indicate that the mortars used during the battle in which Andrii was killed were almost certainly provided by North Korea, and the Shahed drones used in the battle were supplied by Iran. *See, e.g.,* https://www.osw.waw.pl/en/publikacje/analyses/2024-02-06/fight-avdiivka-intensifies-day-712-war; and https://www.euronews.com/next/2024/04/22/how-irans-kamikaze-shahed-drones-are-being-used-in-ukraine.  Such was confirmed to Plaintiffs Brett Kimberlin and Kelsie Kimberlin through discussions with surviving members of Andrii's unit, when they visited Andrii's hometown and other cities in Ukraine.

4.  This attack was so intense and brutal that Andrii laid wounded in the snow, unable to be immediately rescued, according to his military colleagues.  When he was finally evacuated, he was too weak and injured to make it to the hospital and he died.

5.  Andrii was given a hero's burial and the entire population of his village lined the road for kilometers while his comrades carried him to the cemetery where he was buried next to his mother.  The flags of Ukraine and the Third Separate Assault Brigade were handed to his

weeping grandparents.  Local journalists filmed the procession and funeral and posted it on YouTube. https://www.youtube.com/watch?v=EnuY_8uHlag.

6.   On November 23, 2022, the European Parliament designated the Russian Federation a "state sponsor of terrorism." https://www.europarl.europa.eu/news/en/press-room/20221118IPR55707/european-parliament-declares-russia-to-be-a-state-sponsor-of-terrorism. On January 19, 1984, the United States designated Iran a "state sponsor of terrorism", and on November 20, 2017, it designated North Korea as a "state sponsor of terrorism." https://www.state.gov/state-sponsors-of-terrorism

7.   Upon information and belief, the terrorists who killed Andrii were organized death squads that were sent in "terrifying" waves to kill soldiers and civilians in Avdiivka. They were deployed, supported, funded, and supplied by their terrorist-sponsoring countries, which have consistently supported and sponsored terrorist attacks on Ukrainians and relatives of Americans in Ukraine, and continue to do so today.  https://www.meforum.org/mef-observer/irans-role-in-deploying-middle-eastern-militias-to-the-war-in-ukraine

8.   The killing of Andrii was an extrajudicial killing because it was a deliberate killing not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples.  *See* Section 3 of the Torture Victim Protection Act of (the "TVPA", P.L. 102-56, 106 Stat. 73, note following 28 U.S.C. §1350, §3). Moreover, the terrorists in question killed Andrii without any declaration of war, and Russia's invasion of Ukraine violates Article 2(4) of the UN Charter, a central tenet of the charter that requires UN member states to refrain from the "use of force against the territorial integrity or political independence of any state." https://www.cfr.org/article/how-russias-invasion-ukraine-violates-international-law

9.   Plaintiffs Kelsie Kimberlin ("Kelsie"), Tetyana Kimberlin ("Tetyana"), Karina Kimberlin ("Karina"), and Brett Kimberlin ("Brett"), in this case are American family members of Andrii who have been emotionally injured by the death of Andrii.

10.   Plaintiffs bring this action against Defendants Russia, Iran, and North Korea, as well as the Iranian Revolutionary Guard – Quds Force – seeking monetary damages for Andrii's wrongful death and related claims arising out of the terrorist attack that killed Andrii for which Iran and North Korea provided material support and resources to Russian terrorists.

## I.    PLAINTIFFS

11. Kelsie Kimberlin resides in Maryland and she is a United States citizen.  She is a blood relative of Andrii.  During her childhood, she spent every summer with him in Ukraine where she and Andrii were inseparable. When she visited Ukraine for months during those summers, she lived in the same home with Andrii.  Kelsie's mother, a naturalized American citizen who lives with her in Maryland, was born in the same Ukrainian village as Andrii and she has always treated Andrii as her son.  Kelsie considered Andrii her brother and Andrii considered Kelsie his sister, and, when they were together, they referred to each other that way, and introduced each other to other people that way.

12.   Tetyana Kimberlin and Brett Kimberlin, who are married, reside in Maryland, and they are United States citizens. Tetyana is Andrii's aunt.  She and her husband, Brett, effectively adopted Andrii after Andrii's father and mother divorced and after his mother died after a long illness.  Andrii's biological father moved to a region far from his village which has since been occupied by Russian terrorists and he did not ever visit Andrii or provide any support to him or his ailing mother. Even when Andrii's mother was alive, she was unable to care for him due to her severe illnesses, so Tetyana and Brett became the functional equivalent of his parents.

Tetyana and Brett provided full financial support for Andrii before and after the loss of his parents including paying for his food, medical care, school books, computers, phone and clothes. Tetyana and Brett regularly visited Andrii when they traveled to Ukraine and regularly kept in touch with him by phone and online communications. When Kelsie and Brett visited Ukraine in August 2018, they brought Andrii to Kyiv by train where he stayed with them. Brett bought him everything necessary for his college in Dnipro, including books, clothes, computer, and cell phone. Tetyana and Brett also paid Andrii's college tuition. When Andrii died, Brett paid for his funeral and his personal belongings and papers were given to Brett.

13. Karina Kimberlin resides in Maryland and she is a United States citizen. Since the time Karina was born before the full-scale war, Karina made regular summer visits to Ukraine with Tetyana and Kelsie. She stayed in the same home where Andrii lived and considered him her older brother. These visits were not vacations but rather month-long visits to be close to her blood family. Karina had a very close bond with Andrii, and he always treated her as his sister.

14. Kelsie, Tetyana, Karina, and Brett were devastated by the death of Andrii, and because of Andrii's death, they have suffered long-term depression, nightmares, sadness, anger, and anxiety attacks that have affected their lives in deep-seated ways. Kelsie said that the death "took away a part of me," and she has suffered repeated panic attacks. Each of the Kimberlins has dealt with this grief in their own way, which is ongoing.

15. Within days after Andrii's death, Kelsie, who is a popular American-Ukrainian singer, was so upset that she recorded a video which she posted on her YouTube channel emotionally condemning Speaker of the House Mike Johnson and his Republican colleagues for holding up funding support for Ukraine. The first day she attempted to record the video, she was unable to do so because she kept breaking down. The next day, it took four takes to finally get the

recording.  That video was so emotional and compelling that it resulted in meetings or condolences from President Joe Biden, the Office of President Volodymyr Zelensky, Ukrainian Ambassador Oksana Markarova, Senator Ben Cardin, and Congressman Jamie Raskin.  It also led to an invitation from well-known Ukrainian filmmakers for Kelsie to film a full-length movie in Ukraine about Andrii, Russian terror, and the broader issues of Ukrainian resistance.  Kelsie and Brett traveled to Ukraine in October 2024 for a month to make that film which included a week on the frontline where they visited Andrii's grave and met with his friends and comrades. Kelsie broke down at the gravesite and suffered a severe panic attack which was captured by the film crew.  Kelsie, Tetyana, Karina, and Brett have suffered from nightmares, sleep problems, post-traumatic stress disorders, depression, and anxiety over the death of Andrii.

## II.    DEFENDANTS

### A.  IRAN AND THE IRANIAN NATIONAL GUARD – QUDS FORCE

16. Defendant Iran is a foreign sovereign state. Since 1984, it has been designated by the United States as State Sponsor of Terrorism.  *See* https://www.state.gov/state-sponsors-of-terrorism/

17. For at least three years, Iran has engaged in and materially supported the Russian Federation in its terror campaign in Ukraine, including through its Islamic Revolutionary Guards ("IRGC")-Quds Force ("Quds Force"), and its nonstate partners and military proxies. Iran's Quds Force, pursuant to Executive Order 13224 and by designation of the United States State Department on April 15, 2019, was classified as a Specially Designated Global Terrorist organization.  https://2017-2021.state.gov/designation-of-the-islamic-revolutionary-guard-corps/

18. As set forth herein in this Complaint, Iran has provided material support and resources to the Russian Federation before and after the terrorist attack that killed Andrii. *See* How Iran's

'kamikaze' Shahed drones are being used in Ukraine |

https://www.euronews.com/next/2024/04/22/how-irans-kamikaze-shahed-drones-are-being-used-

in-ukraine  Russia pays Iran for its Shahed drones, which it has used extensively in its continued

assault on Ukraine and its people.  To that end, experts estimate that each Shahed drone,

provided to Russia by Iran, costs between $20,000 and $50,000, and that such have been

provided by Iran and used by Russia in Ukraine since as early as August – September 2022. *Id*.

The same article cited to a report which explained that because of a "billion-dollar arms deal"

with Tehran, and other support by Iran to assist Russia in developing its own factories, Russia

would be able to produce some 6,000 drones annually by 2025.   Iran is not immune from the

jurisdiction of this Court because Plaintiffs are seeking money damages "for personal injury or

death that was caused by an act of torture, extrajudicial killing, . . . or the provision of material

support or resources for such an act," as provided for in the Terrorism Exception.  28 U.S.C. §

1605A(a).

19. Iran has been designated a State Sponsor of Terrorism since January 19, 1984, pursuant

to Section 6(j) of the Export Administration Act of 1979, 50 U.S.C. Appx. § 2405(j), and section

620A of the Foreign Assistance Act of 1961, 22 U.S.C. § 2371.  *See* https://www.state.gov/state-

sponsors-of-terrorism/

20. 28 U.S.C. § 1605A(a)(2)(A)(i)(I) allows a court "of the United States or of the States"

(*i.e.,* Federal or State courts) to hear claims against a foreign state related to an act of state-

sponsored terrorism if the claimants or the victims meet certain requirements in other provisions

of 28 U.S.C. § 1605A(a)(2) and "the foreign state was designated a state sponsor of terrorism at

the time the act described in paragraph (1) occurred . . . remains so designated when the claim is

filed . . . .".

21. Because Iran was "designated as a state sponsor of terrorism at the time" of the February 22, 2024, act of torture and extrajudicial killing of Andrii on which Plaintiffs' claims are based, and "remains so designated" at the time of the filing of those claims, the requirements of 28 U.S.C. § 1605A(a)(2)(A)(i)(I) are met.

22. Moreover, in relation to Plaintiffs' claims against the IRGC – Quds Force, 18 U.S.C. § 2333 allows a court to hear claims of injury to the close family member – if a U.S. national – of any person killed by reason of an act of international terrorism. Under 18 U.S.C. § 2333 (1), the term "international terrorism" means activities that: 1) (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State; 2) (B) appear to be intended— 3) (i)to intimidate or coerce a civilian population; 4) (ii) to influence the policy of a government by intimidation or coercion; ….".

23. As explained in this Complaint, the IRGC, including its Aerospace Forces as well as its Quds Aviation Industries – has provided material support to Russia for its continued assault upon Ukraine and its people, through the provision of drones and technology and know-how designed to enable and enhance Russia's own use and production of drones against Ukraine. In fact, they assisted in building a drone factory in Russia and trained Russian soldiers how to use Iranian drones to kill Ukrainians. *See* IRGC UAVs and the involvement in Ukraine War https://www.gfatf.org/archives/irgc-involvement-ukraine/ The IRGC's Quds Force is responsible for extraterritorial operations, outside of Iran, in support of such efforts. *Id*. (Explaining, "Quds Force exports IRGC's UAVs to other terror organizations (proxies and allies) such as Hezbollah, Houthis, and Iraqi militias, as well as to allay countries such as Venezuela, Syria, Ethiopia, Tajikistan, Algeria and most notably Russia.").

B. **NORTH KOREA**

24. Defendant North Korea is a foreign sovereign state.

25.  For decades, North Korea has partnered with the Russian Federation in terrorist activities around the globe including cyber-attacks, money laundering, and extrajudicial killings. *See* Bechtol, Jr., Bruce E. "North Korea and Support to Terrorism: An Evolving History." *Journal of Strategic Security* 3, no. 2 (2010).

26. Since at least November 2022, North Korea has specifically supported Russia with artillery (including mortar rounds), missiles, and other weapons of terror in connection with attacks in and against Ukraine including against civilians. *See* https://home.treasury.gov/news/press-releases/jy2751; and https://www.cfr.org/article/how-north-korea-has-bolstered-russias-war-ukraine (citing to an article in the New York Times and other sources) which estimated that as of July 2025, North Korea had suppled some 12 million artillery rounds (including mortars) to Russia for use in Ukraine. The same article from the Council on Foreign Relations referenced that "In July 2025, South Korea's Defense Intelligence Agency estimated that North Korea had sent more than twelve million artillery shells in total, with some Russian units at times coming to rely almost exclusively on North Korean-made artillery. Overall, Ukraine's military intelligence agency estimates that North Korea is providing roughly half of Russian artillery shells.".

27. The same article from the Council on Foreign Relations explained that this provision of support, including munitions (to include mortar rounds), was repaid by Russia, in part, through Russia's financing of "several North Korean military programs" and that it has also provided North Korea with "air defense equipment, anti-aircraft missiles, and advanced electronic warfare systems.".

9

28. As set forth in this Complaint, North Korea provided material support and resources for the February 22, 2024 attack that killed Andrii.

29. North Korea is not immune from the jurisdiction of this Court because Plaintiffs are seeking money damages "for personal injury or death that was caused by an act of torture, extrajudicial killing, . . . , or the provision of material support or resources for such an act," as provided by 28 U.S.C. § 1605A(a).

30. North Korea is now and has been designated as a State Sponsor of Terrorism since November 20, 2017, pursuant to Section 6(j) of the Export Administration Act of 1979, 50 U.S.C. App. § 2405(j), and section 620A of the Foreign Assistance Act of 1961, 22 U.S.C. § 2371. 200. 28 U.S.C. § 1605A(a)(2)(A)(i)(I) allows a court "of the United States or of the States" (*i.e.,* Federal or State courts) to hear claims against a foreign state related to an act of state-sponsored terrorism if the claimants or the victims meet certain requirements in other provisions of 28 U.S.C. § 1605A(a)(2) and "the foreign state was designated a state sponsor of terrorism at the time the act described in paragraph (1) occurred . . . remains so designated when the claim is filed . . . .".

31. Because North Korea was "designated as a state sponsor of terrorism at the time" of the February 22, 2024 act of torture, and extrajudicial killing on which Plaintiffs' claims are based, and "remains so designated" at the time of the filing of those claims, the requirements of 28 U.S.C. § 1605A(a)(2)(A)(i)(I) are met.

C. **RUSSIA**

32. The Russian Federation has not yet been designated by the United States as a State Sponsor of Terrorism. Therefore, it cannot be sued directly under 28 U.S.C. § 1605A(a)(2)(A)(i)(I). However, it is liable under the commercial exception to the Foreign Sovereign Immunities Act, 28 U.S. Code § 1605(a) (2), which allows liability, and allows a suit to be brought in the courts "of the United States or of the States" (*i.e.,* Federal or State courts), where (a) "the action is based upon . . . (2) . . . "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." As explained in this Complaint, Russia squarely falls within the scope of this exception.

33. As alleged in this Complaint, Russia has engaged in commercial activity with North Korea and with Iran, in direct relationship to its ongoing assault upon Ukraine and its people. In exchange for money and other items of significant value, Russia has obtained weapons, weapons systems, and other material support which it has used to kill Ukrainians – including Andrii. These actions have caused a direct effect in the United States, namely the damages to Plaintiffs resulting from the murder of Andrii.

34. Russia has also engaged in other types of commercial activity directly tied to its continued assault upon Ukraine and its people. In close correlation with its ongoing acts of terrorism within Ukraine, Russia has employed and paid an army of journalists, bloggers, and others to spread disinformation and raise funds on media and social media sites to support its terrorist activities in Ukraine that have had a direct effect in the United States. https://www.justice.gov/archives/opa/pr/justice-department-disrupts-covert-russian-government-sponsored-foreign-malign-influence (explaining, "As alleged in an unsealed affidavit, the

Russian companies Social Design Agency (SDA), Structura National Technology (Structura), and ANO Dialog, operating under the direction and control of the Russian Presidential Administration, and in particular First Deputy Chief of Staff of the Presidential Executive Office Sergei Vladilenovich Kiriyenko, used these domains, among others, to covertly spread Russian government propaganda with the aim of reducing international support for Ukraine, bolstering pro-Russian policies and interests, and influencing voters in U.S. and foreign elections, including the U.S. 2024 Presidential Election. "). Russia has used banks, cryptocurrency, and other means to transfer funds for weapons purchases and payments to terrorists from the Wagner Group, Iran, and North Korea, that have had a direct effect in the United States. https://www.civilaffairsassociation.com/post/decentralized-warfare-russia-s-use-of-cryptocurrencies-to-fund-private-military-companies Russia has used social media and transferred funds to recruit Americans to join its terrorist activities in Ukraine which has had a direct effect in the United States. https://tdhj.org/blog/post/russia-ukraine-hybrid-cognitive-warfare/

35. The Defendants are not immune from a declaratory judgment that its terrorist death squads participated in the killing of Andrii and other Ukrainians in violation of international law as provided for in 28 U.S. Code § 2201.

36. President of Ukraine Volodymyr Zelensky reported in September 2024 that Russia has committed 137,000 war crimes in Ukraine, causing over 39,081 civilian deaths. https://kyivindependent.com/zelensky-137-000-war-crimes/ Russian terrorists have systematically violated the Geneva Convention by targeting civilians and civilian infrastructure, kidnapping children, committing sexual violence against men, women and children, torturing Ukrainian civilians and defenders, killing and beheading captured Ukrainian defenders, and

forcibly deporting civilians from Ukraine to Russian territory. https://www.asil.org/ILIB/ecthr-finds-russia-committed-grave-international-law-violations-ukraine (explaining,

"In a unanimous judgment, the ECHR found that Russia exercised effective control over the self-proclaimed "Donetsk People's Republic" and "Luhansk People's Republic" from 2014 and held jurisdiction over military attacks on Ukrainian territory. The court determined that acts of separatist forces were attributable to Russia as its de facto organs."); and

https://www.ohchr.org/en/press-releases/2024/03/ukraine-un-commission-concerned-continuing-patterns-violations-human-rights

37. Neither Russia, Iran, nor North Korea have declared war against Ukraine but have engaged in terrorism against Ukraine and its people. https://theconversation.com/putins-state-of-the-nation-why-russia-hasnt-officially-declared-war-and-what-difference-it-would-make-200208 Their terrorist attacks in Ukraine have been not been legalized by any legitimate international body.

38. Russia's President Vladimir Putin has been indicted by the Hague for war crimes in Ukraine.  https://www.icc-cpi.int/news/situation-ukraine-icc-judges-issue-arrest-warrants-against-vladimir-vladimirovich-putin-and.  The European Parliament has declared Russian as a state sponsor of terrorism based on its aggression in Ukraine. https://www.europarl.europa.eu/news/en/press-room/20221118IPR55707/european-parliament-declares-russia-to-be-a-state-sponsor-of-terrorism

### III.    <u>JURISDICTION AND VENUE</u>

39. This Court has jurisdiction over the subject matter of this case against the FSIA Defendants (Russia, Iran, and North Korea) under 28 U.S.C. § 1330(a). Russia, Iran, and North Korea are subject to suit in the courts of the United States pursuant to the Foreign Sovereign

Immunities Act, 28 U.S.C. § 1602 *et seq*., and in particular 28 U.S.C. § 1605A (the "Terrorism Exception"), and exceptions to the Act, and related statutes.  The Court has the power under 28 U.S. Code § 2201 to issue a declaratory judgment.

40. This Court has jurisdiction over the subject matter of this case against the Terrorist Group Defendants (The Iranian Revolutionary Guard – Quds Force) under 28 U.S.C. § 1331 because this case arises under the laws of the United States. The Terrorist Group Defendants are subject to suit in the courts of the United States under the Anti-Terrorism Act. 18 U.S.C. § 2333 states: "Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees."

41. Venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(4) and 28 U.S.C. § 1391(b)(3).

## IV.    STATEMENT OF FACTS

42. According to the Ukrainian Ministry of Foreign Affairs, the Russian terrorist invasions of Ukraine in 2014 and 2022 violated the following list of international laws, agreements, treaties, and other legal documents:

- UN Charter (1945);

- Helsinki Final Act (1975);

- Declaration on Principles of International Law concerning Friendly Relations and Co-operation among States in accordance with the UN Charter (1970);

- UN GA Resolution 3314 "Definition of Aggression" (1974);

- Declaration on the Inadmissibility of Intervention in the Domestic Affairs of States and the Protection of Their Independence and Sovereignty (1965);

- Declaration on the Inadmissibility of Intervention and Interference in the Internal Affairs of States (1981);

- Declaration on the Enhancement of the Effectiveness of the Principle of Refraining from the Threat or Use of Force in International Relations (1987);

- Russia had also violated number of bilateral and multilateral agreements, namely;

- Budapest Memorandum on Security Assurances related to the Ukraine's accession to the Non-Proliferation Treaty (1994);

- Agreement on Friendship, Cooperation and Partnership between Ukraine and the Russian Federation (1997);

- Agreement between Ukraine and the Russian Federation on the Ukrainian-Russian state border (2003);

- Agreement between Ukraine and the Russian Federation on cooperation in use of the Azov Sea and Kerch Strait (2003);

- Agreement between Ukraine and the Russian Federation on the status and conditions of Russian Black Sea Fleet in Ukraine (1999); and

- Russian occupation and further attempted annexation of Crimea and Sevastopol, as well as Russian illegal actions in Donbas, fall under the definition of aggression according to the points a), b), c), d), e) i g) Art.3 of the Annex to UN General Assembly Resolution "Definition of Aggression" (3314(XXIX)). The following actions are a serious crime against international peace, which entails international responsibility of the Russian Federation at the state level and international criminal responsibility of its leadership.

*See* https://mfa.gov.ua/en/countering-russias-agression/10-facts-you-should-know-about-russian-military-aggression-against-ukraine; and https://mfa.gov.ua/en/news/zayava-mzs-ukrayini-u-zvyazku-z-tisyachnim-dnem-z-pochatku-povnomasshtabnogo-vijskovogo-vtorgnennya-rosijskoyi-federaciyi-v-ukrayinu

43. Russia's terrorist attack on Ukraine has been marked not by the rules of war, but by acts of terrorism. Instances of such terroristic acts by Russian troops and/or its affiliates (including, in certain instances, members of the Wagner Group), include the following:

- shot down a civilian airliner MH17 killing all 298 people on board;

- set up torture chambers in captured cities where they engaged in the systematic rape, torture, dismemberment, and killing of civilians, including women, boys, girls, and men. They dumped their bodies in mass graves after tying their hands, raping them,

torturing them, and then killing them with knives, bullets, garrotes, chemical poisons, and starvation;

- kidnapped and systematically sexually abused women and children and transported them to occupied and Russian territory for more abuse;

- killed tens of thousands of Ukrainian civilians with countless terrorist attacks on civilian targets including hospitals, schools, shops, buses, metros, and entertainment centers, including but not limited to through the use of drones and artillery (including mortal rounds) and missiles;

- targeted and destroyed critical civilian infrastructure including dams, energy facilities, roads, water treatment plants, communication facilities, apartments, and homes;

- killed tens of thousands of Ukrainian defenders with tens of thousands of terrorist attacks, and shot, tortured and beheaded countless defenders who were captured by the terrorists; and

- illegally invaded and occupied Ukrainian territory while killing, torturing and kidnapping anyone who resisted.

*See* https://www.rferl.org/a/russia-ukraine-war-crimes/33336084.html

44. After the United Nations, the European Union, NATO countries, and most of the global community condemned Russia's 2022 terrorist attack on Ukraine, Russia reached agreements with two other terrorist countries, Iran and North Korea, as well as with the IRGC and its Quds Force, to help them commit more devastating terrorist attacks against Ukraine.  Reports concerning these agreements also provide strong evidence that both North Korea and Iran, including Iran's IRGC and its Quds Force, had already provided material support to Russia for its war efforts in Ukraine and conspired with Russia to commit those acts.

https://www.reuters.com/world/what-are-russias-strategic-treaties-with-iran-north-korea-china-2025-01-17/ (explaining in part, "The U.S. and South Korea say North Korea has shipped ballistic missiles, anti-tank rockets and millions of rounds of ammunition for Russia to use in the war. Moscow and Pyongyang have denied weapons transfers."; and "Russia has made extensive use of Iranian drones in the Ukraine war.").

16

45. The United States designated Iran's Revolutionary Guard ("IRGC") as a foreign terrorist organization in April 2019, finding that it "participates in, finances, and promotes terrorism as a tool of statecraft." https://2017-2021.state.gov/designation-of-the-islamic-revolutionary-guard-corps/. One branch of the IRGC – the Quds Force– is a special operations unit founded in 1990 shortly after the Iran-Iraq war.  The Quds Force is one of Iran's "primary tool[s]" for conducting covert lethal activities outside of Iran, including terrorist operations.  Because of the Quds Force's terrorist activities and support of other terrorist groups, the United States designated it a Specially Designated Global Terrorist Organization in October 2007.  On April 28, 2019, the United States designated the Revolutionary Guard as a Foreign Terrorist Organization. https://www.dni.gov/nctc/terrorist_groups/irgc.html

46. In September 2022, Iran, including through the IRGC and its Quds Force, began sending hundreds of Shahed kamikaze drones to Russia to terrorize Ukraine, and sent Iranian terrorists from the Revolutionary Guard to train Russian terrorists on how to use the drones to kill Ukrainians and destroy Ukrainian infrastructure. https://www.iranintl.com/en/202411197064 In November 2022 and again in February 2023, Iran and Russia signed agreements to build a Shahed drone manufacturing facility in Russia and sent Revolutionary Guard terrorists there to train and help build Shahed drones. https://iranprimer.usip.org/blog/2023/mar/01/timeline-iran-russia-collaboration-drones Since that time, Russia has attacked Ukraine with tens of thousands of Iranian drones which have caused billions in damage and resulted in countless deaths and injuries. https://isis-online.org/isis-reports/updated-analysis-of-russian-shahed-136-deployment-against-ukraine The European Union and the United States have sanctioned Iran and Iranians for providing Shahed and other attack drones to Russia. https://www.consilium.europa.eu/en/press/press-releases/2024/10/14/iran-seven-individuals-and-

seven-entities-sanctioned-in-response-to-iran-s-missile-transfer-to-russia/  The United States, on October 22, 2022, stated that Iran providing drones and munitions to Russia to attack Ukraine violated United Nations Resolution 2231 which prohibited Iran from exporting conventional weapons to any other country.  https://ofac.treasury.gov/media/931876/download?inline

47.  In November 2022, North Korea delivered the first batch of munitions to a Russian terrorist organization called the Wagner Group to use against Ukraine. https://www.axios.com/2022/12/22/us-north-korea-russia-wagner-mercenaries-ukraine The United States Treasury had previously sanctioned Wagner for its terrorist activities https://home.treasury.gov/news/press-releases/jy1220  and the UK Government designated it as a "terrorist group." https://www.gov.uk/government/news/wagner-group-proscribed In August 2023, North Korea began supplying Russia with ammunition and artillery (including mortar rounds) to terrorize Ukraine.  In November 2023, North Korea began supplying ballistic missiles to Russia to terrorize Ukraine. https://www.theguardian.com/world/2025/apr/25/how-north-korea-arms-russia-in-ukraine-war  In October 2024, North Korea sent terrorists to Russia to attack Ukraine and they have killed Ukrainians in cold blood. https://www.bbc.com/news/articles/ckg25wxvpy2o North Korean munitions have caused the death of countless Ukrainians and resulted in billions of dollars in infrastructure destruction. https://www.bbc.com/news/world-asia-68933778 The chart below further serves to document the material aid and assistance that North Korea has provided to Russia for its continued assault upon Ukraine and its people:

Figure 1. Timeline of DPRK-Russia Military Relations, September 2022 to October 2024

**Source:** Congressional Research Service.

48. On January 10, 2024, 47 countries joined Ukraine, the United Kingdom and the United States in condemning ballistic missile transfers between North Korea and Russia, which are in breach of United Nations sanctions. https://usun.usmission.gov/joint-statement-on-russias-procurement-and-use-of-weapons-from-the-dprk-in-violation-of-un-security-council-resolutions/ South Korean intelligence agencies have reported that North Korea has sent twelve million artillery shells to Russia to attack Ukraine. https://www.kyivpost.com/post/56255#:~:text=Artillery%20Shells%20E2%80%93%20S.-,Korean%20Intel,deployed%20since%20late%20last%20year.

49. As a direct and proximate result of the material support and resources Iran and North Korea have provided to Russia, thousands of innocent Ukrainians have been killed or injured including Andrii Rachok, which harmed the Plaintiffs, who are Andrii's close American family. https://united24media.com/war-in-ukraine/why-russias-shahed-drones-are-now-deadlier-and-harder-than-ever-to-stop-11693 Moreover, as a direct and proximate result of the illegal and wrongful terrorist activity of Russia, North Korea, and Iran – including the IRGC and its Quds Force – Andrii was killed in February 2024.

50. As alleged above, Russia, Iran, and North Korea have engaged in commercial transactions for the provision of weapons, weapons systems, and technology and know-how for

such, to directly aid Russia in its continued assault upon Ukraine and its people. These commercial transactions have had a direct effect in the United States by causing severe damage, as explained in the Complaint, to Plaintiffs. Moreover, as alleged above, Russia (at times in partnership with North Korea and Iran) has also engaged in commercial activity in the United States and elsewhere to promote its terrorist activities in Ukraine that have had an effect on the United States including transferring funds, recruiting Americans, spreading disinformation, and purchasing weapons and other material supplies.

https://www.theguardian.com/world/2025/apr/10/russia-social-media-ads-videos-recruiting-china-mercenaries; https://www.euronews.com/2023/06/01/how-russian-mercenary-wagner-group-uses-social-media-to-recruit-new-members-around-the-wor;

https://www.rand.org/pubs/research_briefs/RBA3450-2.html;

51. On September 4, 2024, the United States Department of Justice seized 32 web domains that were being used to spread disinformation and reduce international support for Ukraine. https://www.justice.gov/archives/opa/pr/justice-department-disrupts-covert-russian-government-sponsored-foreign-malign-influence

## COUNT I
## DECLARATORY JUDGMENT UNDER 28 U.S.C. § 2201
### (Against All Defendants)

52. Plaintiffs incorporate the allegations set forth in Paragraphs 1 – 51 as if fully set forth herein.

53.  28 U.S.C. § 2201 provides:

(a) In a case of actual controversy within its jurisdiction . . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

54. As alleged in this Complaint, an actual controversy exists between Plaintiffs and the Defendants as to the following issues:

a. That Russia is not immune from and is subject to the claims of the Plaintiffs in Counts IV, V, VII, VIII, and IX under the FSIA's commercial activity exception, based upon its commercial conduct as alleged in this Complaint;

b. That North Korea, a designated State Sponsor of Terrorism, is not immune from and is subject to the claims of the Plaintiffs in Counts II, IV, V, VI, VII, VIII, and IX, and further, provided material aid and support to Russia for its continued assault upon Ukraine and the Ukrainian people;

c. That Iran, a designated State Sponsor of Terrorism, is not immune from and is subject to the claims of the Plaintiffs in Counts II, IV, V, VI, VII, VIII, and IX, and further, provided material aid and support to Russia for its continued assault upon Ukraine and the Ukrainian people;

d. That the IRGC and its Quds Force, which have been designated as Terrorist Organizations, have provided material aid and support for Russia and its continued assault upon Ukraine and the Ukrainian people; and

e. Based upon the allegations in this Complaint, the wrongful acts of Russia, North Korea, Iran, and the IRGC and its Quds Force proximately caused the death of Andrii Rachok and violated international and United States laws.

55. WHEREFORE, Plaintiffs demand that they be awarded this Declaratory relief under Count IX as to each of these disputed issues against each of the Defendants.

**COUNT II**
**28 U.S.C. § 1605A(c), PRIVATE RIGHT OF ACTION**
**(Against Defendants Iran and North Korea)**

56. Plaintiffs incorporate the allegations set forth in Paragraphs 1 – 51 as if fully set forth herein.

57. Under 28 U.S.C. § 1605A (c), a foreign state that is a state sponsor of terrorism is liable to United States nationals for personal injury or death caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act, committed by its officials, employees, or agents while acting within the scope of their office, employment, or agency. In this instance, although Andrii was not a U.S. national, each of the Plaintiffs are U.S. nationals and because of their close family relationship with Andrii, they each have standing to bring this claim.

58. On February 22, 2024, Russian terrorists, materially aided and abetted by North Korea and Iran (to include the IRGC and its Quds Force), through the provision of material support and/or resources to the Russian terrorists of the February 22nd attack as described herein, willfully and/or recklessly, violently, and forcefully caused the terrorist attack in Ukraine against innocent human beings, including Andrii Rachok.

59. Iran and/or its terrorist agents were acting within the scope of their office, employment or agency in committing the acts alleged herein, including providing material support and/or resources to the Russian terrorists, in connection with planning and carrying out the February 22nd attack. https://commonslibrary.parliament.uk/research-briefings/cbp-10048/

60. The Islamic Republic of Iran was and is a state sponsor of terrorism as described in 28 U.S.C. § 1605A(a)(2)(A)(i).

61.  On February 22nd, North Korea and/or its terrorist agents, through the provision of material support and/or resources to the Russian terrorists of the February 22nd  attack as described herein, willfully and/or recklessly, violently, and forcefully caused the terrorist attack in Ukraine against innocent human beings, including Andrii Rachok.

https://ssi.armywarcollege.edu/SSI-Media/Recent-Publications/Article/4122913/north-korea-in-ukraine-analyzing-authoritarian-cooperation/

62. North Korea and/or its terrorist agents were acting within the scope of their office, employment or agency in committing the acts alleged herein, including providing material support and/or resources to the Russian terrorists, in connection with planning and carrying out the February 22nd attack.

63.  North Korea was and is a state sponsor of terrorism as described in 28 U.S.C. § 1605A(a)(2)(A)(i).

64.  As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Iran and North Korea and/or their terrorist agents in providing material support to Russian terrorists for the February 22nd attack, Andrii Rachok was killed and Kelsie, Tetyana, Karina, and Brett Kimberlin suffered physical pain and suffering, mental anguish, emotional pain and suffering, and/or economic losses.

65. Pursuant to 28 U.S.C. §§ 1605 (a)(2) and 1605A (c), Kelsie, Tetyana, Karina, and Brett Kimberlin, who are each United States nationals (citizens) may assert a cause of action against Iran and North Korea for personal injury or death of a relative that was caused by an act of extrajudicial killing, torture, hostage-taking or the provision of material support or resources for such an act.

66. Accordingly, Kelsie, Tetyana, Karina, and Brett Kimberlin are entitled to compensatory damages from Russia, Iran and North Korea, for the death to Andrii resulting from the willful, wrongful, intentional, and reckless acts of their terrorist agents.

67. Plaintiffs are also entitled to an award of punitive damages against North Korea and Iran for the wrongful killing of Andrii, as such conduct was outrageous in the extreme, wanton, willful, and malicious, and constituted a threat to the public at large, and therefore Plaintiffs are entitled to an award of punitive damages against each of those Defendants.

68. Plaintiffs are further entitled to an award of the costs of bringing this lawsuit and their reasonable attorneys' fees.

69. WHEREFORE, Plaintiffs demand that judgment be entered against Russia, Iran and North Korea, jointly and severally, in favor of the Plaintiffs, for Count I, in connection with the February 22, 2024, attack described herein.

## COUNT III
### 18 U.S. Code § 2333, PRIVATE RIGHT OF ACTION
### (Against The IRGC – Quds Force)

70. Plaintiffs incorporate the allegations set forth in Paragraphs 1 – 51 as if fully set forth herein.

71. Under 18 U.S.C. § 2333 (a), any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

72. As alleged in this Complaint, the United States designated Iran's IRGC as a foreign terrorist organization in April 2019.  One branch of the IRGC – the Quds Force– is a special operations unit founded in 1990 shortly after the Iran-Iraq war.  The Quds Force is one of Iran's

"primary tool[s]" for conducting covert lethal activities outside of Iran, including terrorist operations.  Because of the Quds Force's terrorist activities and support of other terrorist groups, the United States designated it a Specially Designated Global Terrorist Organization in October 2007.  On April 28, 2019, the United States designated the Revolutionary Guard as a Foreign Terrorist Organization.  https://www.dni.gov/nctc/terrorist_groups/irgc.html

73. As alleged in this Complaint, in September 2022, Iran, including through the IRGC and its Quds Force, began sending hundreds of Shahed kamikaze drones to Russia to terrorize Ukraine, and sent Iranian terrorists from the Revolutionary Guard to train Russian terrorists on how to use the drones to kill Ukrainians and destroy Ukrainian infrastructure. In November 2022 and again in February 2023, Iran and Russia signed agreements to build a Shahed drone manufacturing facility in Russia and sent Revolutionary Guard terrorists there to train and help build Shahed drones. Since that time, Russia has attacked Ukraine with tens of thousands of Iranian drones which have caused billions in damage and resulted in countless deaths and injuries. The European Union and the United States have sanctioned Iran and Iranians for providing Shahed and other attack drones to Russia. The United States, on October 22, 2022, stated that Iran providing drones and munitions to Russia to attack Ukraine violated United Nations Resolution 2231 which prohibited Iran from exporting conventional weapons to any other country.

74. As alleged in this Complaint, Andrii was killed near the city of Avdiivka, Ukraine while defending his country from these terrorists.  Based upon reports from Andrii's fellow soldiers in the Third Separate Assault Brigade, his unit fought in an intense battle lasting more than 10 days. Through such, Andrii was protecting civilians in the city of Adviivka, as well as his fellow soldiers.  During this battle, Andrii's unit was hit by mortars and also attacked by drones

(Shahed), and available information and reports indicate that Andrii was killed due to injuries caused by the use of such weapons. The terrorists did not provide medical assistance to Andrii, and used weapons and artillery to keep Andrii from being evacuated, so he died a slow and torturous death.

75. Numerous published media reports indicate that the mortars used during the battle in which Andrii was killed were almost certainly provided by North Korea, and the Shahed drones used in the battle were supplied by Iran. Such was confirmed to Plaintiffs Brett Kimberlin and Kelsie Kimberlin through discussions with surviving members of Andrii's unit, when they visited Andrii's hometown and other cities in Ukraine. As such, Andrii's death was proximately caused by the material aid and support given by the IRGC – including its Quds Force – to Russia.

76. Pursuant to 18 U.S. Code § 2333 (a), Kelsie, Tetyana, Karina, and Brett Kimberlin, who are each United States nationals (citizens) may assert a cause of action against the IRGC and its Quds Force, for personal injury or death of a relative that was caused by an act of international terrorism, to wit: the killing of their close family member, Andrii.

77. Accordingly, Kelsie, Tetyana, Karina, and Brett Kimberlin are entitled to an award of compensatory damages – and three times that underlying amount – from the IRGC and its Quds Force, as well the costs of bringing this lawsuit and their reasonable attorneys' fees.

78. WHEREFORE, Plaintiffs demand that judgment be entered against the IRGC and its Quds Force, jointly and severally, in favor of the Plaintiffs, for Count II, in connection with the February 22, 2024, attack described herein.

## <u>COUNT IV</u>
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against All Defendants)

79.    Plaintiffs incorporate the allegations set forth in Paragraphs 1 – 51 as if fully set forth herein.

80. Under Maryland law, as well as the law of the District of Columbia, a party is liable for intentional infliction of emotional distress when it acts in a manner that is outrageous and purposely or recklessly causes emotional distress so severe that it could be expected to adversely affect mental health and the party's conduct does cause such distress.

81. On February 22, 2024, Russia, with the material aid and assistance of North Korea and Iran, as well as the IRGC and its Quds Force, through the attack of the Russian terrorists as described herein, willfully and/or recklessly, violently, and forcefully caused the terrorist attack in Ukraine against innocent human beings, including Andrii Rachok. The use of North Korean mortars and Iranian Shahed drones to attack Ukrainian civilians and soldiers proximately caused the death of Andrii Rachok.

82. As a direct and proximate result of the extreme and outrageous conduct on the part of the Defendants, which proximately caused the death of Andrii, Plaintiffs suffered severe emotional distress, entitling them to an award of compensatory damages.

83. Plaintiffs are also entitled to an award of punitive damages against the Defendants for the wrongful killing of Andrii, as such conduct was outrageous in the extreme, wanton, willful, and malicious, and constituted a threat to the public at large.

84. Plaintiffs are further entitled to an award of the costs of bringing this lawsuit.

85. WHEREFORE, Plaintiffs demand that judgment be entered against Russia, North Korea, Iran, and the IRGC and its Quds Force, jointly and severally, in favor of the Plaintiffs, for Count III, in connection with the February 22, 2024, attack described herein.

## COUNT V
## WRONGFUL DEATH AND/OR SURVIVAL DAMAGES
### (Against All Defendants)

86.    Plaintiffs incorporate the allegations set forth in Paragraphs 1 – 51 as if fully set forth herein.

87. Under Maryland law as well as the law of the District of Columbia, a party is liable for wrongful death if it knowingly or recklessly causes the death of a person.

88. On February 22, 2024, Russia, with the material aid and assistance of North Korea and Iran, as well as the IRGC and its Quds Force, through the attack of the Russian terrorists as described herein, knowingly or recklessly caused the terrorist attack in Ukraine against innocent human beings, including Andrii Rachok. The use of North Korean mortars and Iranian Shahed drones to attack Ukrainian civilians and soldiers proximately caused the death of Andrii Rachok.

89. As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of Defendants and/or their agents in connection with planning and carrying out the February 22nd attack, Andrii Rachok who is represented herein by Kelsie, Tetyana, Karina, and Brett Kimberlin, was fatally injured.

90. Pursuant to 28 U.S.C. §§ 1605 (a)(2) and 1605A(c), as well as 18 U.S.C. § 2333 (a) and/or applicable state law, Plaintiffs, who are personal representatives of individuals who were fatally injured may assert a cause of action against the Defendants for the wrongful death of Andrii.

91. Accordingly, Plaintiffs are entitled to recover compensatory damages against the Defendants for the wrongful death of Andrii.

92. Plaintiffs are also entitled to an award of punitive damages against the Defendants for the wrongful killing of Andrii, as such conduct was outrageous in the extreme, wanton, willful, and malicious, and constituted a threat to the public at large.

93. Plaintiffs are further entitled to an award of the costs of bringing this lawsuit.

94. WHEREFORE, Plaintiffs demand that judgment be entered against Russia, North Korea, Iran, and the IRGC and its Quds Force, jointly and severally, in favor of the Plaintiffs, under Count IV, in connection with the February 22, 2024, attack described herein.

**COUNT VI**
**AIDING AND ABETTING**
**(Against Defendants North Korea, Iran, the IRGC and its Quds Force)**

95. Plaintiffs incorporate the allegations set forth in Paragraphs 1 – 51 as if fully set forth herein.

96. A party is liable in tort for aiding and abetting when it participates in, assists, advices, or solicits an act or omission, committed or about to be committed by another person, or who orders, authorizes, or ratifies such an act or omission.

97. As alleged in this Complaint, on February 22, 2024, Defendants North Korea, Iran, and the IRGC and its Quds Force, and/or its terrorist agents, through the provision of material support and/or resources to the Russian terrorists of the February 22nd attack, as described herein, willfully, violently, and forcefully caused the terrorist attack in Ukraine against innocent civilians, including Andrii Rachok.

98. Those Defendants and their agents were acting within the scope of their office, employment or agency in committing the acts alleged herein, including providing material

support and/or resources to the Russian terrorists in connection with planning and carrying out the February 22nd attack, which proximately caused the death of Andrii.

99. Accordingly, Plaintiffs are entitled to recover compensatory damages against Defendants North Korea, Iran, the IRGC and its Quds Force, for the wrongful killing of Andrii.

100. Plaintiffs are also entitled to an award of punitive damages against those Defendants for the wrongful killing of Andrii, as such conduct was outrageous in the extreme, wanton, willful, and malicious, and constituted a threat to the public at large.

101. Plaintiffs are further entitled to an award of the costs of bringing this lawsuit.

102. WHEREFORE, Plaintiffs demand that judgment be entered against North Korea, Iran, the IRGC and its Quds Force, jointly and severally, in favor of the Plaintiffs, under Count V, in connection with the February 22, 2024, attack described herein.

### COUNT VII
### CIVIL CONSPIRACY
### (Against All Defendants)

103.  Plaintiffs incorporate the allegations set forth in Paragraphs 1 – 51 as if fully set forth herein.

104.  Under Maryland law and the law of the District of Columbia, a party is liable for civil conspiracy if there is an agreement between it and one or more other parties to commit an unlawful act that harms a third party and the conspiracy is related to an underlying civil wrong, such as a tort, and the agreement is acted on and causes damage.

105.  As explained in this Complaint, on February 22, 2024, Russian terrorists willfully, intentionally, and recklessly killed Andrii, and Defendants North Korea, Iran, the IRGC and its Quds Force, provided material aid and support for such wrongful and illegal conduct.

106.    The material aid and support provided by North Korea, Iran, the IRGC and its Quds Force reflect an agreement between each of them and Russia that the weapons, weapons systems, technology, and know-how provided to Russia was for the purpose of killing Ukrainian people and its soldiers, including Andrii.

107.    Defendants North Korea, Iran, the IRGC and its Quds Force, and their agents were acting within the scope of this conspiracy as well as within the scope of their employment when they engaged in the aforementioned, wrongful acts, which proximately caused the death of Andrii.

108.    Accordingly, Plaintiffs are entitled to recover compensatory damages against the Defendants for the wrongful killing of Andrii, which was part of the civil conspiracy between and amongst them.

109.    Plaintiffs are also entitled to an award of punitive damages against the Defendants for their civil conspiracy and the wrongful killing of Andrii, as such conduct was outrageous in the extreme, wanton, willful, and malicious, and constituted a threat to the public at large.

110.    Plaintiffs are further entitled to an award of the costs of bringing this lawsuit.

111.    WHEREFORE, Plaintiffs demand that judgment be entered against the Defendants, jointly and severally, in favor of the Plaintiffs, under Count VII, in connection with the February 22, 2024, attack described herein.

<u>**COUNT VIII**</u>
**ASSAULT AND BATTERY**
**(Against All Defendants)**

112.    Plaintiffs incorporate the allegations set forth in Paragraphs 1 – 51 as if fully set forth herein.

113.  Under Maryland law and the law of the District of Columbia, a party is liable for assault and battery if it engages in the intentional use of any kind of force, directly or indirectly, against a person's body, in any manner, without that person's consent; or in an attempt or threat, by act or gesture, to use force against a person's body, when the party making the attempt or threat can be reasonably assumed to have the intent or ability to carry out the attempt or threat.

114.  As alleged in this Complaint, the Russian terrorists willfully and intentionally committed an assault and battery upon Andrii in relation to its attack on February 22nd, which killed him.  As further alleged in this Complaint, each of the other Defendants provided material aid and support to Russia, which proximately caused the assault and battery upon Andrii.

115.  As further alleged in this Complaint, Russia's assault and battery upon Andrii was materially aided by the support provided to Russia by Defendants North Korea, Iran, the IRGC and its Quds Force.

116.  Defendants Russia, North Korea, Iran, the IRGC and its Quds Force, and their agents were acting within the scope of their employment when they engaged in the aforementioned, wrongful acts, which proximately caused the death of Andrii.

117.  Accordingly, Plaintiffs are entitled to recover compensatory damages against the Defendants for the assault and battery which resulted in the killing of Andrii.

118.  Plaintiffs are also entitled to an award of punitive damages against the Defendants for such wrongful conduct, as it was outrageous in the extreme, wanton, willful, and malicious, and constituted a threat to the public at large.

119.  Plaintiffs are further entitled to an award of the costs of bringing this lawsuit.

120.  WHEREFORE, Plaintiffs demand that judgment be entered against the Defendants, jointly and severally, in favor of the Plaintiffs, under Count VIII, in connection with the February 22, 2024, attack described herein.

**COUNT IX**
**GROSS NEGLIGENCE AND NEGLIGENCE**
**(Against All Defendants)**

121.  Plaintiffs incorporate the allegations set forth in Paragraphs 1 – 51 as if fully set forth herein.

122.  Under Maryland law and the law of the District of Columbia, a party is liable for harm suffered by another if it commits a negligent, reckless, or intentional act that a reasonable and prudent person would not have committed under the same circumstances; or refrains from committing an act that a reasonable and prudent person would have committed under the same circumstances, thereby causing damages to any person that a reasonable person would have under the same circumstances foreseen that, in the ordinary course of events, was liable to be) injured by the act or omission.

123.  As alleged in this Complaint, on February 22, 2024, the Russian terrorists wrongfully, willfully, and intentionally attacked Andrii under circumstances where they had a duty not to engage in such conduct towards him, including but not limited to the fact that Russia has not declared war upon Ukraine and otherwise illegally invaded Ukraine and attacked its citizens and soldiers who are lawfully defending the Ukrainian people and its territory.

124.  On February 22, 2024, the Russian terrorists breached such duty when it engaged in the foregoing conduct, which proximately caused the death of Andrii.

125.  As further alleged in the Complaint, the provision of weapons, weapons systems, technology, and know-how by North Korea, Iran, the IRGC and its Quds Force, to Russia, for

the purposes of assisting it in such conduct, was illegal and violated their respective duties under international law to not engage in such conduct.  As a result of such, the Defendants proximately caused the death of Andrii.

126.   Defendants Russia, North Korea, Iran, the IRGC and its Quds Force, and their agents were acting within the scope of their employment when they engaged in the aforementioned, wrongful acts, which proximately caused the death of Andrii.

127.   Accordingly, Plaintiffs are entitled to recover compensatory damages against the Defendants for the breaches of their respective duties, which proximately caused the death of Andrii.

128.   Plaintiffs are also entitled to an award of punitive damages against the Defendants for such wrongful conduct, as it was outrageous in the extreme, wanton, willful, and malicious, and constituted a threat to the public at large.

129.   Plaintiffs are further entitled to an award of the costs of bringing this lawsuit.

130.   WHEREFORE, Plaintiffs demand that judgment be entered against the Defendants, jointly and severally, in favor of the Plaintiffs, under Count IX, in connection with the February 22, 2024, attack described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Kelsie Kimberlin, Tetyana Kimberlin, Karina Kimberlin, and Brett Kimberlin pray that the Court:

1. Enter judgment in their favor and against Russia, North Korea, Iran, and the IRGC and its Quds Force, as alleged under each of Counts I – IX of this Complaint;

2. Award Plaintiffs compensatory damages, against the Defendants, jointly and severally, in an amount to be determined at trial, in excess of $20,000,000;

3. Award Plaintiffs punitive damages against the Defendants, jointly and severally, in an amount to be determined at trial, in excess of $20,000,000;

4. Award Plaintiffs the Declaratory Relief set forth in Count I;

5. Award Plaintiffs pre- and post-judgment interest against the Defendants, jointly and severally, on the amount of the judgment entered in their favor;

6. Award Plaintiffs their reasonable attorneys' fees against the Defendants, jointly and severally, under the foregoing Counts for which such an award is authorized by applicable law;

7. Award Plaintiffs and against the Defendants, jointly and severally, Plaintiff's costs of bringing this action; and

8. Award Plaintiffs any other relief which the Court deems to be fair and just.

Dated: January 2, 2026                       Respectfully Submitted,

                                             /s/ *John B. Flood*
                                             _____
                                             John B. Flood (D.C. Bar No. 500069)
                                             Anthony J. Marcavage, Of Counsel
                                             (D.C. Bar No. 982763)
                                             Thaddeus Maciag, Of Counsel
                                             (D.C. Bar No.  421728)
                                             Flood Law LLC
                                             2600 Tower Oaks Blvd, Suite 290
                                             Rockville, MD 20852
                                             Phone: (240) 403-2619
                                             Fax: (240) 238-7065
                                             john@fmlaw.org
                                             anthony@fmlaw.org
                                             ted@fmlaw.org
                                             *Counsel for Plaintiffs*